CV409-188

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

2009 DEC -2  PM 1:48

| | | |
|---|---|---|
| LANCE HENSLEY, | § | Case No. CR 407-419 |
| | § | |
| Movant, | § | Prisoner/Register No. 13494-021 |
| | § | |
| v. | § | Place of Confinement: Federal Correctional |
| | § | Institution, Jesup, Georgia |
| UNITED STATES OF AMERICA | § | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES NOW, Lansford "Lance" Hensley, Movant herein, by and through the undersigned counsel, and respectfully files this, his Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, and shows in support of his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody as follows:

### I. INTRODUCTION AND BACKGROUND

On September 14, 2007, federal agents searched the residence of Defendant Lance "Lansford" Hensley in Pooler, Georgia, and seized a computer and other property belonging to Mr. Hensley and his wife. Declaration of Lance Hensley, attached as Exhibit A, ¶¶ 4, 6. The computer contained pornographic images and videos involving children. Following the search and seizure, Mr. Hensley retained attorney Richard M. Darden of Darden, Burns & Burns, LLP, of Savannah, Georgia (hereinafter "Counsel"), to represent him. Doc. # 20, p. 14-15; Exhibit A at ¶ 5.

On November 29, 2007, Mr. Hensley met with Counsel at his office and Counsel advised Mr. Hensley to enter into a plea agreement. Exhibit A at ¶ 7. Counsel stated to Mr. Hensley that

the number of images and videos on the computer would have *no* impact on Mr. Hensley's guilty plea or sentence and that Mr. Hensley would receive *a sentence of either no imprisonment or a short term of imprisonment. Id.* at ¶ 7.

On December 21, 2007, Mr. Hensley was charged in an information with one count of possession of child pornography in violation of 18 U.S.C. § 2252a(a)(5)(B). Doc. # 1; Exhibit A, ¶ 8. Counsel never filed any pre-trial motions on behalf of Mr. Hensley and never discussed the filing of any pre-trial motions with him. *Id.* at ¶ 6.

On March 1, 2008, Mr. Hensley met with Counsel and Counsel gave Mr. Hensley a written statement for Mr. Hensley to read to the Court at his plea hearing on March 5, 2008. Exhibit A, ¶ 9. Mr. Hensley entered into a Plea Agreement with the Government on March 4, 2008, and the Court accepted the plea at a hearing pursuant to Federal Rule of Criminal Procedure 11 on March 5, 2008. Doc. # 20, p. 14, 15, 39; Exhibit A, ¶ 10.

**A. Counsel's Deficient and Prejudicial Performance Relating to Mr. Hensley's Sentencing**

In April 2008, Counsel telephoned Mr. Hensley and informed Mr. Hensley that he had received a copy of Mr. Hensley's Presentence Investigation Report and wanted Mr. Hensley to come to his office to review the Presentence Investigation Report for accuracy. Exhibit A, ¶ 11. The Presentence Investigation Report calculated Mr. Hensley's sentence under the applicable United States Sentencing Guideline, U.S.S.G. § 2G2.2, as a base level 18, adding 13 levels for four different enhancements under § 2G2.2, and a 3 level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, for a total offense level of 28 and recommended a sentence of 78 to 97 months imprisonment. Presentence Investigation Report, p. 6. Among the enhancements to Mr. Hensley's sentence applied by the Presentence Investigation Report was a five (5) level enhancement for an offense involving more than 600 images pursuant to U.S.S.G. §

2

2G2.2(b)(7)(D). *Id.* Following Counsel's call, Mr. Hensley went to Counsel's office, however Counsel was not present and his office would *not* give Mr. Hensley a copy of the Presentence Investigation Report. Exhibit A, ¶ 11.

In early May 2008, Mr. Hensley met with Counsel and explained to Counsel that Mr. Hensley *did not download all the images and videos found on his computer and that he was unaware of a lot of the content on the computer.* Exhibit A, ¶ 12. Counsel stated to Mr. Hensley that he would *file* a response to the Presentence Investigation Report prior to, or at, sentencing . *Id.* at ¶¶ 12, 13.

During this meeting, Mr. Hensley informed Counsel that Mr. Hensley's counsellor from his sex offender class was willing to write a letter to the Court in support of Mr. Hensley. Exhibit A, ¶ 14. Counsel never contacted the counsellor. *Id.* Counsel also stated to Mr. Hensley that letters from friends and supporters on Mr. Hensley's behalf would not benefit Mr. Hensley at sentencing. *Id.*

On May 16, 2008, Mr. Hensley and his family met with Counsel and Counsel informed them that he was going to request a downward departure from the Sentencing Guidelines for Mr. Hensley "based on how the files were obtained and [Mr. Hensley's] not having knowledge of exactly what was downloaded, [Mr. Hensley's] having not been in any chat rooms and the only activity [Mr. Hensley] engaged in was the one download via PayPal." Exhibit A, ¶ 15. Counsel *never discussed the Government's or the Probation Office's recommended sentence, or whether there were any arguments against any portion of the sentence. Id.* at ¶ 17.

At the sentencing hearing on June 3, 2008, Counsel erroneously informed the Court that he had reviewed the Presentence Investigation Report with Mr. Hensley and that Mr. Hensley had no objections to the factual accuracy to the Presentence Investigation Report. Doc. # 21, p. 8.

Counsel offered testimony by Mr. Hensley's sons, and asked the Court to consider a downward departure. *Id.* at 14-24. Counsel made a brief, passing mention during the hearing that a website had dumped the images and videos on Mr. Hensley's computer, but stated that it did not "minimize" anything. *Id.* at 23. The Court found that there was no reason to depart from the Guidelines, and imposed a sentence of 80 months imprisonment on Mr. Hensley, as well as a $100.00 special assessment and a $15,000.00 fine. *Id.* at 26.

Mr. Hensley appealed his sentence to the United States Court of Appeals for the Eleventh Circuit. *See United States v. Hensley*, 322 Fed.Appx. 776 (11th Cir. 2009) (*per curiam*; unpublished). Counsel filed a brief and motion to withdraw pursuant to *Anders* v. *California*, 386 U.S. 738, 87 S.Ct. 1396 (1967). Mr. Hensley retained attorneys Thomas Withers and Anthony Lake of Gillen Withers & Lake, LLC, of Savannah and Atlanta, Georgia, to represent him in his appeal. The Eleventh Circuit issued an opinion affirming Mr. Hensley's sentence on April 6, 2009. Mr. Hensley is currently incarcerated at the Federal Correctional Institute in Jesup, Georgia. Exhibit A, ¶ 2.

## B. Mr. Hensley's Sentence Should Be Vacated or Set Aside

Counsel failed to file any objections to the Presentence Investigation Report, despite expressly stating to Mr. Hensley that he would file objection, thereby waiving Mr. Hensley's objections to the Presentence Investigation Report without his consent. Counsel also failed to review Mr. Hensley's recommended sentence and enhancements with him, and failed to file any sentencing memorandum for a downward variance or downward departure in sentence on Mr. Hensley's behalf, or to prepare and make arguments for such a variance or departure at sentencing. Counsel's failures constituted part of a general pattern of lack of any effort and false or erroneous representations in Counsel's representation of Mr. Hensley.

4

As set forth herein, Counsel's actions and omissions leading up to, and at, sentencing constituted deficient performance, in violation of Mr. Hensley's constitutional rights and Counsel's ethical responsibilities. Counsel's actions and omissions were furthermore prejudicial to Mr. Hensley, since there is a reasonable probability that, had Counsel's representation been sufficient, Mr. Hensley would have received a different sentence. For the reasons set forth herein, this Court should vacate or set aside Mr. Hensley's sentence and resentence him.

## II. ARGUMENT AND CITATION OF AUTHORITIES

### A. Standard for *Habeas Corpus* Relief Based Upon Ineffective Assistance of Counsel

"An ineffective assistance of counsel claim can be established upon a showing that the (1) 'counsel's performance was deficient,' and (1) 'that the deficient performance prejudiced the defense'…'" *Lawhorn v. Allen*, 519 F.3d 1272, 1293 (11th Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984)). "An ineffective assistance of counsel claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255 (1988)." *United States v. Butler*, 41 F.3d 1435, 1437 (11th Cir. 1995) (citing *United States v. Griffin*, 699 F.2d 1102, 1107-08 (11th Cir. 1983)). "To establish a constitutionally deficient performance, the defendant must 'identify the acts or omissions ... that are alleged not to have been the result of reasonable professional judgment' to 'show that counsel's representation fell below an objective standard of reasonableness' and 'outside the wide range of professionally competent assistance.'" *Id.* (quoting *Strickland*, at 687). In showing that his or her counsel's performance was deficient:

> The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." [Cit.] Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take."

5

*Willis v. United States*, No. CV608-116, CR606-026, 2009 WL 1765771, *2 (S.D.Ga., June 22, 2009) (Order) (quoting *Strickland*, at 689; *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008); quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)). This burden can shift from the movant, however, where the circumstances "are so likely to prejudice the accused that the cost of litigating their effect... is unjustified,'" *Lawhorn*, at 1293, such as where "'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,'" *id.* (Quoting *United States v. Cronic*, 466 U.S. 648, 658, 59, 104 S.Ct. 2039 (1984); citing *Atkins v. Singletary*, 965 F.2d 952, 958-59 (11th Cir. 1992)).

In order to show prejudice, the petitioner must show that "'there is a reasonable probability that... the result of the [sentencing] proceeding would have been different,'" *Lawhorn*, 519 F.3d at 1296 (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Willis*, 2009 WL 1765771 at *2 (quoting *Strickland*, at 694; citing *Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983)).

**B.** **Counsel's Failure to File or Argue Any Objections to the Presentence Investigation Report and Failure to Review the Presentence Investigation Report with Mr. Hensley Constituted Deficient Performance Outside of Reasonable Professional Standards and Prejudiced Mr. Hensley**

Counsel failed to file or argue any objections to Mr. Hensley's Presentence Investigation Report, including to the enhancement of Mr. Hensely's sentence based upon the number of images involved in the offense pursuant to U.S.S.G. § 2G2.2(b)(7)(D), despite expressly promising to Mr. Hensley that he would file such objections. Exhibit A, ¶¶ 12, 13. 15. Counsel furthermore failed to review Mr. Hensley's Presentence Investigation Report and recommended sentence with him. *Id.* at ¶ 17. Counsel's wholesale failure to file any objections to the

Presentence Investigation Report and to review the Presentence Report with his client constituted deficient performance resulting in prejudice to Mr. Hensley. Federal Rule of Criminal Procedure 32 expressly provides, in relevant part, "(1) Time to Object. Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to *material information, sentencing guideline ranges*, and policy statements contained in or omitted from the report." Fed.R.Crim.P. 32(f)(1). This Court's Local Criminal Rule 32.2 also provides, in pertinent part, that "[c]ounsel for the defense and counsel for the government shall have fourteen (14) calendar days from the date of the receipt of the preliminary draft of the presentence report to file objections with the probation officer..." LCrR 32.2 (emphasis added). Failure to timely object to a presentence report results in waiver of objections to a presentence report. See *See United States v. Bennett*, 472 F.3d 825, 833-34 (11th Cir. 2006) (*per curiam*) (citing *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006); *United States v. Williams*, 438 F.3d 1272, 1274 (11th Cir. 2006); *United States v. Burge*, 407 F.3d 1183, 1191 (11th Cir. 2005); *United States v. Shelton*, 400 F.3d 1325, 1328-1330 (11th Cir. 2005)).

Counsel's failure to file any objections to the Presentence Investigation Report after expressly promising to do was in direct violation of Mr. Hensley's Fifth Amendment right to Due Process and Sixth Amendment Right to effective assistance of counsel. This Court and others have held that counsel's failure to raise arguable objections to a presentence report or sentencing enhancements to warrant *habeas corpus* relief. For instance, in *Willis v. United States*, 2009 WL 1765771, the Court granted the movant's motion for § 2255 relief and held that the movant was entitled to be resentenced, where the movant's sentencing attorneys failed to object to the "career offender" enhancement pursuant to U.S.S.G. § 4B1.1 recommended in the

movant's presentence investigation report and the movant argued that his prior felonies were related, holding that:

> Because competent counsel would have investigated the prior convictions to determine whether they were related under U.S.S.G. Manual § 4A1.2, and because the designation as a career offender significantly impacted [the movant's] recommended sentence under the guidelines, his counsel were ineffective in failing to conduct such an inquiry, and [the movant] thus should be resentenced under the appropriate sentencing guidelines provisions.

*id.* at *2. Similarly, the defendant in *United States v. Gentry*, 429 F.Supp.2d 806 (W.D.La. 2006) (Order), pled guilty to bank robbery and use of a firearm during a crime of violence, and the presentence report recommended a four-level increase based on the allegation that the loss from the defendant's crime exceeded $800,000, *id.* at 808, 810. However, the alleged amount included medical expenses, and there existed an argument that such amounts were not properly includable in the amount of loss and that the loss amount would have therefore arguably been less than $800,000, which would have resulted in only a three-level enhancement. *Id.* at 811. The defendant's counsel "did not file any written objection to the PSR, and he did not make any oral objections at the sentencing hearing." *Id.* at 810. The defendant was sentenced and filed a motion to vacate his sentence, pursuant to § 2255. *Id.* at 808. The district court granted the defendant's motion and ordered a new sentencing hearing, finding regarding the defendant's counsel's performance that:

> In this case, there was no strategic selection of objections and arguments. *Rather, there was no objection at all.*
> Defendant pleaded guilty, allowing counsel to focus on the sentencing hearing in an effort to reduce Defendant's exposure and ultimate sentence. Counsel demonstrated through his notes and admitted receipt of [a] letter [from counsel for a co-defendant] that he was aware of a potential issue regarding calculation of the loss…
> *[R]easonably effective criminal defense counsel do not shy from confrontation and must zealously present their client's arguments.* In this case, the performance prong of the *Strickland* standard has been satisfied.

8

*Id.* at 811 (emphasis added) (citing *United States v. Stricklin*, 290 F.3d 748 (5th Cir. 2002); *United States v. Conley*, 349 F.3d 837 (5th Cir. 2003)). Likewise, in *United States v. Wingo*, 41 Fed.Appx. 236 (10th Cir. 2002) (unpublished), the Tenth Circuit Court of Appeals reversed the district court's denial of his § 2255 motion and remanded for resentencing where the defendant's counsel failed to object to a two-level enhancement pursuant to U.S.S.G. § 3D1.4 recommended in the defendant's presentence report, which would have given the defendant a total offense level of 11 instead of the 13 recommended by the presentence report, finding that counsel was ineffective and that the defendant was prejudiced and entitled to relief, *id.* at 238, 39, 240. *See also Stricklin*, at 752 (vacating the judgment of the district court dismissing the defendant's motion pursuant to § 2255 and remanding for resentencing, finding that the defendant had show that his counsel's performance did not meet objective standards of reasonableness and resulted in prejudice where counsel failed to object to the quantity of drugs which were used to determine his sentence pursuant to U.S.S.G. § 2D1.1).

Counsel in this case failed to raise any objections to Mr. Hensley's Presentence Investigation Report and failed to conduct any investigation regarding the sentence and enhancements recommended in the Presentence Investigation Report, similar to the counsel in *Willis*. Counsel waived Mr. Hensley's right to object to the Government's and the Probation Office's recommended sentence, in violation of his Fifth and Sixth Amendment rights. Furthermore, pursuant to *Gentry*, Counsel persuaded Mr. Hensley to enter into a guilty plea, leaving Counsel free to focus on Mr. Hensley's sentencing. Counsel's waiver of Mr. Hensley's objections to the Presentence Investigation Report indisputably constituted deficient performance under the first prong of *Strickland*, especially in view of the fact that Counsel *expressly promised* Mr. Hensley that he would file an objection concerning the number of images found on Mr.

Hensley's computer. Exhibit A, ¶¶ 12, 13. Counsel's deficient performance and acts and omissions

Moreover, Counsel's failure to review Mr. Hensley's Presentence Investigation Report with him also clearly constituted deficient performance. Exhibit A, ¶ 17. Rule 32 provides, in relevant part, that "(1) [i]n General. At sentencing, the court… (A) must verify that the defendant and the defendant's attorney *have read and discussed* the presentence report and any addendum to the report…" Fed.R.Crim.P. 32(i)(1)(A) (emphasis added). "[T]he failure to disclose the report to the defendant, *or to require counsel to review the report with the defendant*, significantly reduces the likelihood that false statements will be discovered, as much of the content of the presentence report will ordinarily be outside the knowledge of counsel." Fed.R.Crim.P. 32 Notes (1983 Amends.) (emphasis added). In *Veal v. United States*, 486 F.Supp.2d 564 (N.D.W.Va. 2007) (Report and Recommendation), the United States Magistrate Judge recommended that the petitioner's motion to vacate, set aside or correct sentence pursuant to § 2255 be granted where the petitioner's counsel did not review his presentence investigation with him, holding:

> *It* would appear that it is mandatory in this circuit that the presentence investigation report be reviewed by counsel with the defendant. *United States v. McManus*, 23 F.3d 878 (4th Cir.1994); *United States v. Miller*, 849 F.2d 896 (4th Cir.1988). While the transcript demonstrates that petitioner made all his objections to the presentence report and each was ruled upon by the Court, the rule appears to be mandatory. While it also appears that the petitioner will fail on all his objections to the pre-sentence report, and the guidelines will suggest a maximum sentence, the rule appears to be mandatory.

*Id.* at 572.

In addition, Counsel's waiver of Mr. Hensley's objections to his recommended sentence and enhancements, and his failure to review Mr. Hensley's sentence with him, violated the Georgia Rules of Professional Conduct. Georgia Rule of Professional Conduct 1.3 provides that

"*[a] lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this Rule means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer.*" Georgia Rule of Professional Conduct 1.3 (emphasis added). Comment 2 to Rule 1.3 recognizes that "[a] client's interests often can be adversely affected by the passage of time…" Georgia Rule of Professional Conduct 1.3, Cmt. 2. Similarly, Georgia Rule of Professional Conduct 1.4 provides, in relevant part, that "[a] lawyer… shall keep the client reasonably informed about the status of matters…" Georgia Rule of Professional Conduct 1.4. Comment 2 to Rule 1.4 states that "*[t]he guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation.*" Georgia Rule of Professional Conduct 1.4, Cmt. 2 (emphasis added). Counsel wholly abandoned Mr. Hensley's rights and best interests in clear violation of Counsel's duties in direct violation of Georgia Rules of Professional Conduct 1.3 and 1.4.

Finally, Counsel's failures cannot be held to constitute any asserted form of "sound trial strategy." Counsel almost entirely failed to oppose the Government's recommended sentence for Mr. Hensley prior to, and at, sentencing. Counsel's grossly deficient performance and failure to zealously represent Mr. Hensley were demonstrated throughout the case:

- Counsel falsely or erroneously stated to Mr. Hensley that he would receive a sentence of either no or minimal imprisonment, Exhibit A, ¶ 8;

- Counsel falsely or erroneously stated to Mr. Hensley that the number of images or videos found on his computer would have no impact on his plea and sentence, *id.*;

- Counsel failed to provide Mr. Hensley with a copy of the Presentence Investigation Report, *id.* at ¶ 12;

- Counsel falsely or erroneously stated to Mr. Hensley that all he could say to the Court at sentencing was a statement that Counsel had prepared for him, *id.* at ¶ 20;

- Counsel failed to inform Mr. Hensley that the Government had filed a Sentencing Memorandum in his case and failed to file any response to the Sentencing Memorandum, *id.* at ¶ 19;

- Counsel failed to attend Mr. Hensley's meeting with his Probation Officer, *id.* at ¶ 11; and

- Counsel failed to file or discuss the filing of any pre-trial motions, including motions to suppress, *id.* at ¶ 7.

Despite Mr. Hensley's informing Counsel that a website had "dumped" the images and videos on his computer, Counsel also failed to make any effort to investigate the objection to the Presentence Investigation Report and recommended sentence, including to consult with potential computer experts. *See id.* at ¶ 13; *see also United States v. Cordy*, 560 F.3d 808, 814 (8th Cir. 2009) (expert for defendant charged under § 2252 testified that, given more time, he would have searched the defendant's computer "for evidence of network intrusion, viruses, and spyware…" to determine whether the defendant had accessed the files on his computer); *United States v. Kuchinski*, 469 F.3d 853 (9th Cir. 2006) ("[a]ccording to the evidence before the district court, when a person accesses a web page, his web browser will automatically download that page into his Active Temporary Internet Files, so that when the site is revisited the information will come up much more quickly than it would have if it had not been stored on the computer's own hard

drive. When the Active Temporary Internet Files get too full, they spill excess saved information into the Deleted Temporary Internet Files. All of this goes on without any action (or even knowledge) of the computer user") (discussing *United States v. Romm*, 455 F.3d 990, 997-1001 (9th Cir. 2006)).

The application of the enhancement pursuant to § 2G2.2(b)(7)(D) increased Mr. Hensley's total offense level by five (5) levels from 23 to 28, and from a potential 46 to 57 months imprisonment to 78 to 97 months imprisonment. Even if Mr. Hensley's sentence had only been increased by two (2) levels pursuant to § 2G2.2(b)(7), his recommended sentencing range would have been less than the sentence imposed by the Court. Furthermore, as fully set forth below, § 2G2.2 and its enhancements are entitled to little deference by the Court. Accordingly, pursuant to the second prong of *Strickland*, Counsel's deficient performance at sentencing resulted in prejudice to Mr. Hensley in that there is a reasonable probability that the outcome would have been different. For these reasons, this Court should grant Mr. Hensley's Motion and vacate, set aside or correct Mr. Hensley's sentence.

## C.  Counsel's Failure to Argue for a Reduced Sentence Constituted Deficient Performance Outside of Reasonable Professional Standards and Prejudiced Mr. Hensley

Counsel's failure to file any memorandum for, or sufficiently argue at sentencing, for a reduced sentence or downward departure was also deficient and prejudicial to Mr. Hensley, warranting the vacating, setting aside or correcting of Mr. Hensley's sentence. Exhibit A, ¶ 18. In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), the United States Supreme Court expressly held that a sentencing court "sentence[ ] *within or outside the Guidelines range* in the exercise of his discretionary power under [18 U.S.C.] § 3553(a)…" *id.* at 260 (emphasis added). In *Rita v. United States*, – U.S. –, 127 S.Ct. 2456 (2007), the Supreme Court held that sentencing courts should entertain arguments as to why a case may fall outside the "heartland" pursuant to

U.S.S.G. § 5K2.0, or why a Guidelines sentence "fails properly to reflect § 3553(a) considerations..." *id.* at 2465 (citing Fed.R.Crim.P. 32(f)). Following *Booker* and its progeny, the Eleventh Circuit Court of Appeals has held that "[a]fter the district court has accurately calculated the Guideline range, it 'may impose a more severe or more lenient sentence'..." *United States v. Winingear*, 422 F.3d 1241, 1244-45 (11th Cir. 2005) (emphasis added) (quoting *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005); citing *Booker*, 543 U.S. at 220).

Accordingly, the Court of Appeals has deferentially affirmed as reasonable substantial downward variances from recommended sentencing Guideline ranges. *See United States v. Williams*, 435 F.3d 1350, 1354 (11th Cir. 2006) (affirming downward variance from recommended Guidelines range of 188 to 235 months imprisonment to 90 months; *Winingear*, 422 F.3d at 1246 (affirming downward variance from a statutory maximum of 20 years to 2 years); *United States v. Eugene*, No. 08-16502, 2009 WL 1154869, *1 (11th Cir., April 30, 2009) (*per curiam*; unpublished) (affirming downward variance from a range of 262 to 327 months to 192 months). Sentences below the recommended Guidelines ranges have also been imposed and upheld in child pornography cases. In *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (*per curiam*), the Eleventh Circuit affirmed as reasonable the district court's sentence of 84 months for a defendant who pled guilty to one count of distributing child pornography in violation of § 2252A, weighing the factors in § 3553(a), based on the defendant's history and reports from mental health professionals, despite the fact that the defendant's sentencing range was 151 to 188 months, *id.* at 1298. And the Court of Appeals affirmed as reasonable in *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) (*per curiam*), a 72 month sentence for a defendant

who pled guilty under § 2252A and also faced a sentencing range of 151 to 188 months, *id.* at 1325.

Furthermore, *current § 2G2.2 is the Guideline which is least empirically based of all Sentencing Guidelines*, as a growing number of courts have recognized in opting *not* to give deference to § 2G2.2 for sentencing purposes. As set forth at length in the article Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, p. 2 (January 1, 2009) ("Stabenow"), in 2003, two government attorneys persuaded a Congressman to insert an amendment to § 2G2.2 into an unrelated, popular bill without notice to, or the approval of, the United States Sentencing Commission. *Id.* at 19. The Protect Act, Pub. L. No. 108-21 (2003), added current § 2G2.2(b)(7), providing for up to a five-level increase in offense level depending on the number of images possessed, as well as numerous other changes to the Guideline. *Id.* at 21. "No research, study, body of experience, or rationale, was provided to justify the arbitrary specific offense enhancement amounts, nor the choice of the triggering quantities for the two to five point enhancement related to the number of images of child pornography." *Id.* In passing the "Protect Act":

> "Congress directly amended [for the first time] the Federal Sentencing Guidelines by drafting Guideline text. In the past, Congress often... issue[d] directions to and requests for study from the Commission, but left it to the Commission to craft specific Guideline text. This time, *Congress completely ignored the expert role the Sentencing Commission was designed to play, cut the Commission out of the process entirely, and directly wrote Guideline text to its own specifications.*"

*Id.* at 22 (emphasis added) (quoting Steven L. Chanenson, *Hoist With Their Own Petard?*, 17 Fed.Sent'g.Rep. 20, 23 & nn.54-57 (2004) ("Chanenson") (emphasis original); *see also United States v. Detwiler*, 338 F.Supp.2d 1166, 1171 (D. Or. 2004)). Congress also failed to give the Sentencing Commission or the Judicial Conference "a fair opportunity to consider and comment"

on the amendments. *Id.* (quoting Chanenson, at n.56; citing, *e.g.* Letter from the Judicial Conference of the United States to Senator Orrin G. Hatch (April 3, 2003), *reprinted at* 15 Fed. Sent'g Rep. 343, 343 (2003)). "[T]he statutory process for considering guideline amendments— one that calls for the Sentencing Commission to consult with numerous interested parties in the criminal justice process—was ignored." *Id.* The Protect Act's amendments to § 2G2.2 constitute "the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress nearly 20 years ago." *Id.* at 23.

As a result of measures such as the Protect Act, from 1997 to 2007, the mean sentence imposed on persons convicted for child pornography offenses *increased 443 percent* from 20.59 months to 91.30 months. Stabenow, at 2. However, "[c]ourts across the country have determined the recommendation of the Guidelines based on USSG § 2G2.2 is entitled to less weight because it is not the product of empirical analysis." *United States v. McElheney*, 630 F.Supp.2d 886 (E.D.Tenn., July 2, 2009) (Sentencing Memorandum) (citing *United States v. Phinney*, 599 F.Supp.2d 1037, 1040 (E.D.Wis.2009) (collecting cases)). These courts have imposed sentences below the ranges recommended pursuant to § 2G2.2 . *See Riley*, 2009 WL 2899896 at *8 (concluding that the defendant's advisory Guidelines range of 210 to 260 months did not warrant deference and imposing a sentence of 60 months pursuant to the factors in § 3553(a)); *McElheney*, 630 F.Supp.2d 886 (concluding that the child pornography Guideline was due less weight than empirically based Guidelines and reducing the defendant's sentence from 135 months to 78 months as "sufficient, but not greater than necessary," to meet the sentencing goals of § 3553(a)); *United States v. Jacob*, No. CR 07-2017-MWB, CR 07-2002-MWB, 2009 WL 1849942, *24 (N.D.Iowa, June 26, 2009) (Memorandum Opinion and Order Regarding

Sentencing) (holding that 2G2.2 was not a "reliable indicator[ ] of the Sentencing Commission's perspective on a fair sentence" and varying downward from an advisory range of 292 to 365 months to impose a sentence of 151 months on the defendant); *United States v. Beiermann*, 599 F.Supp.2d 1087, 1107, 1117 (N.D.Iowa 2009) (Memorandum Opinion and Order Regarding Sentencing) ("categorically" rejecting § 2G2.2, which recommended a sentencing range of 210 to 262 months, and sentencing the defendant to 90 months); *United States v. Phinney*, 599 F.Supp.2d 1037, 1043, 44 (E.D.Wis.2009) (Sentencing Memorandum) (concluding that § 2G2.2 was worthy of little respect or deference where Guideline called for sentence of 37 to 46 months and finding a sentence of 6 months sufficient, but not greater than necessary); *United States v. Grober*, 595 F.Supp.2d 382, 384, 412 (D.N.J. 2008) (Opinion) (where enhancements under § 2G2.2 recommended imposition of 235 to 293 month sentence on defendant, giving § 2G2.2 less deference than other Guidelines and imposing a 5 year sentence); *United States v. Doktor*, No. 6:08-CR-46-ORL-31DAB, 2008 WL 5334121, *1 n.5 (M.D.Fla., December 19, 2008) (Memorandum Sentencing Opinion) (imposing a sentence of 36 months on defendant who pled guilty to one count of possessing child pornography and whose Guideline sentencing range was 51 to 71 months for the reason that "the Court was critical of the Guideline because it was not based on empirical data or the sentencing expertise of the Commission"); *United States v. Johnson*, 588 F.Supp.2d 997, 1003 (S.D.Iowa 2008) (Sentencing Memorandum Opinion and Order) (sentencing defendant who pled guilty to receipt, possession, and distribution of visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252 to 84 months imprisonment, despite advisory sentencing range of 121 to 151 months under § 2G2.2, finding that the modifications to § 2G2.2 "do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general

17

revulsion that is associated with child exploitation-related offenses") (citing Skye Phillips, *Protect Downward Departures: Congress and Executive's Intrusion into Judicial Independence*, 12 J.L. & Pol'y 947, 967-84 (2004); *Detwiler*, 338 F.Supp.2d at 1170-71); *United States v. Ontiveros*, No. 07-CR-333, 2008 WL 2937539, *8 (E.D.Wis., July 24, 2008) (Sentencing Memorandum) (defendant who pled guilty to receipt of child pornography in violation of 18 U.S.C. §§ 2252A and whose Guideline range was 97 to 121 months was sentenced to 60 months where court declined to give § 2G2.2 controlling weight); *United States v. Hanson*, 561 F.Supp.2d 1004, 1010 (E.D.Wis. 2008) (Sentencing Memorandum) (sentencing the defendant, who pled guilty to transporting and possessing child pornography pursuant to § 2252A, to 72 months imprisonment, despite the fact that the defendant's recommended Guideline range was 210 to 262 months, concluding that the recommended sentencing range under § 2G2.2 deserved deference).

Federal courts have otherwise sought to mitigate the increasing harshness of § 2G2.2 in sentencing defendants. The Sourcebook of Federal Sentencing Statistics recorded 1,025 sentences for 2G2.2 offenses in 2007, of which 351—or 34 percent—involved downward departures or variances and 219 were pure *Booker* departures. Stabenow, p. 3. "In the 2008 fiscal year (October 1, 2007 through September 30, 2008), slightly more than half (718 of 1,335) of child pornography defendants sentenced under USSG § 2G2.2 received within-Guidelines sentences." *McElheney*, 630 F.Supp.2d 886 (citing United States Sentencing Commission, *2008 Sourcebook of Federal Sentencing Statistics*, p. 79, tbl. 28).

Counsel was indisputably deficient in not filing any sentencing memorandum or preparing thorough arguments and evidence in support of a downward variance or departure from the sentencing range recommended by § 2G2.2. Pursuant to *McBride* and *Gray*, a

18

persuasive case could have been made for a downward variance or departure in Mr. Hensley's case. Mr. Hensley had no prior criminal record and no history of contact with child pornography. Most critically, as the United States Sentencing Commission recognized in its Report to Congress, Sex Offenses Against Children, 1996:

> The seriousness of a crime involving computerized trafficking in child pornography depends in part on 1) the degree to which the computer use facilitates the widespread and instantaneous distribution of images, and 2) the degree to which it increases the likelihood that children will be exposed to the images. Different types of computer use have different effects on these two harms. "Downloading" cyberporn is similar to receiving pornography through the mail... At the other end are largescale, commercial pornographers. Creating and maintaining a B[ulletin] B[oard] S[ystem] or Website with pornography is similar to opening an adult bookstore...persons who upload, send, or post illegal images to accessible sites should be held accountable for the harm done when child pornography is widely disseminates or falls into the hands of children."

Report to Congress, Sex Offenses Against Children, 1996, p. 28 (quoted at Stabenow, p. 15). In this case, Mr. Hensley was alleged to have made a single download of child pornography. There was no allegation there was no allegation that Mr. Hensley distributed or traded child pornography. Mr. Hensley cannot be considered to be the sort of large scale pornographer which § 2252A and § 2G2.2 were primarily designed to deter.

Counsel's failure to file any sentencing memorandum or prepare arguments for a downward variance or departure is particularly egregious given the fact that Mr. Hensley expressly asked Counsel if letters from friends and supporters would assist him at sentencing, to which Counsel replied no. Exhibit A, ¶ 14. Mr. Hensley furthermore expressly informed Counsel that his counselor from his sex offender class was willing to write a letter to the Court in support of a lenient sentence. *Id.*

Courts have held that failure of counsel to present mitigating evidence can constitute ineffective assistance of counsel. *See Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007) (*per*

*curiam*) (reversing the trial court's denial of the petitioner's petition for a writ of *habeas corpus* and remanding the case with instructions to grant the writ where counsel for the defendant, who was convicted for state securities violation, "did not offer a shred of mitigating evidence, object to (or consult with his client about) errors in the PSR, or even lobby for a sentence lower than the one urged by the State"); *Spearman v. United States*, 860 F.Supp. 1234, 1246 (E.D.Mich. 1994) (Order Granting Petitioner's Motion 2255, Allowing Petitioner to Withdraw His Guilty Pleas and Vacate the Sentence Thereon) (granting the petitioner's motion under § 2255 to withdraw his pleas of guilty to dealing in firearms without a license and conspiracy to distribute cocaine based upon ineffective assistance of counsel based in part on the fact that the petitioner's counsel's failure to object to the presentence report, observing that "the court was free to depart down to any sentence deemed proper, depending on possible mitigating evidence and factors presented by petitioner's counsel. There was none of either presented by defense counsel at the sentencing"). Counsel's failure to investigate and present mitigating arguments and evidence in support of a more lenient sentence for Mr. Hensely clearly constituted deficient performance pursuant to *Strickland*. Furthermore, in view of the numerous authorities set forth herein and the fact that § 2G2.2 and its enhancements have been increasingly accorded little or no deference, Counsel's failure was prejudicial to Mr. Hensley in that there is a reasonable probability that Mr. Hensley would have received a different sentence.

### III. <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, this Court should grant Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and vacate or set aside Mr. Hensley's sentence and resentence him.

Respectfully submitted, this 2nd day of December, 2009.

Thomas A. Withers, Esq.
Attorney Bar Number: 772250
Attorney for Mr. Lance Hensley

Gillen, Withers & Lake, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
E-Mail: Twithers@gwllawfirm.com

21

# EXHIBIT "A"

## DECLARATION OF LANCE HENSLEY

I, Lance Hensley, do solemnly swear that the following declaration is true and correct to the best of my knowledge and belief:

### 1.

I am over the age of 18 years-old, and suffer from no legal disabilities.

### 2.

I am formerly a resident of Chatham County, Georgia. I am currently incarcerated at the Federal Correctional Institute in Jesup, Wayne County, Georgia. My Register number is 13494-021. I am serving an 80 month sentence imposed on me by the United States District Court for the Southern District of Georgia (hereinafter "Court") on June 3, 2008, and have been incarcerated since on or about July 7, 2008.

### 3.

I submit this declaration in support of a petition for re-sentencing filed by my attorneys, Mr. Thomas A. Withers and Mr. Anthony C. Lake of Gillen Withers & Lake LLC, pursuant to 28 U.S.C. § 2255, alleging that my trial counsel, Richard Darden, rendered ineffective counsel in his representation of me.

### 4.

On September 14, 2007, the FBI conducted a search of my residence and seized my computer at my residence in Pooler, Georgia. I was interviewed by agents at the time of the search. I admitted to the agents and officers that I had downloaded child pornography.

### 5.

On the Monday after the Friday search I met with Mr. Darden. That initial meeting with Mr.

Darden lasted 10 minutes or so and generally consisted of my reviewing the facts with Mr. Darden, including that I had on one occasion downloaded child pornography via PayPal and admitted that to the agents. Mr. Darden informed that his fee for his services would be $25,000.00, to include an appeal.

6.

Mr. Darden did not prepare or file any pre-trial motions in the case against me. Mr. Darden never discussed the filing of any pre-trial motions with me. Mr. Darden failed to file any pre-trial motions despite the fact that, on or about September 14, 2007, United States Immigration and Customs Enforcement agents executed a search warrant on my residence and conducted a broad search and seizure of property.

7.

I had a couple of very brief meetings with Mr. Darden prior to November 29, 2007. On or about that day, I met with Mr. Darden at his office. He presented a plea agreement to me for a plea to one count, which carried a sentence of 0-10 years. Mr. Darden said that he had reviewed the evidence, and he advised me to sign the plea agreement. At that meeting he briefly reviewed the federal sentencing guidelines. He informed me that the number of images and videos found on my computer would have **no** impact on my guilty plea or sentence. I understood from Mr. Darden that entering a guilty plea was my best option and that I would be sentenced to either no term in prison, or a short term of imprisonment and a fine.

8.

I was charged on December 21, 2007, in a criminal information in this Court with one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

2

9.

On Saturday, March 1, 2008, I met with Mr. Darden to review what would occur at the guilty plea hearing. We reviewed the questions I would be asked and Mr. Darden had written a statement for me to say to the Court.

10.

On Wednesday, March 5, 2008, I pled guilty to possession of child pornography before Judge Edenfield. I met with Mr. Riggs, the Probation Officer that prepared my Presentence Investigation Report; however, Mr. Darden was not present for that meeting.

11.

Sometime in April 2008, I can not remember the exact date, Mr. Darden called me and said he had received the Presentence Investigation Report and he wanted me to stop in to review it for accuracy. I went to Mr. Darden's office shortly after that phone call and reviewed the Presentence Investigation Report. Mr. Darden was not present. I was very concerned about the number of points assigned to me and the information the Probation Officer said was found on my computer. Mr. Darden's office would **not** give me a copy of the Presentence Investigation Report.

12.

In early May, 2008 I met with Mr. Darden to discuss the Presentence Investigation Report. I told Mr. Darden that I did not sit there and download each and every image and video and that I was unaware of a lot of the content. Mr. Darden said he would file a response to the Presentence Investigation Report.

13.

In early May, 2008 I had a phone conversation with Mr. Darden regarding the response to

3

the Presentence Investigation Report and he told me that it would be done prior to or at sentencing. The Presentence Investigation Report applied several enhancements to my recommended sentence and recommended a sentence of 78 to 97 months imprisonment. I was very concerned about the amount of points assigned and the range of prison time I was facing. I now know that **no** response was ever filed to the Presentence Investigation Report.

14.

I also asked Mr. Darden if letters of support from my friends and supporters would be of benefit in sentencing. He said they would not help. Mr. Darden was not aware that I would have to attend sex offender classes between my guilty plea and sentencing. That counselor was willing to write a positive letter to the Court. Mr. Darden never contacted that counselor despite the counselor's offer to me to have Mr. Darden contact him. I informed Mr. Darden of the counselor's willingness to help.

15.

In mid-May, 2008 Mr. Darden called to tell me that sentencing was scheduled for June 3, 2008. On May 16, 2008, my wife, two sons and myself met with Mr. Darden to discuss what would occur at sentencing. Mr. Darden informed us that he was going to request a downward departure from the sentencing guidelines based on how the files were obtained and my not having knowledge of exactly what was downloaded, my having not been in any chat rooms and the only activity I engaged in was the one download via PayPal.

16.

Mr. Darden never discussed with me the Government's or Probation Office's recommended sentence for me, or whether there were any arguments against any portion of the recommended

4

sentence.

17.

Prior to my sentencing hearing, Mr. Darden **never** discussed with me the possibility of filing a sentencing memorandum arguing against the Government's or Probation Office's recommended sentence for me, or for a low sentence, or a lower sentence than that recommended by the Presentence Investigation Report. Mr. Darden failed to file any sentencing memorandum prior to my sentencing hearing.

18.

On May 29, 2009, the Government filed a Sentencing Memorandum seeking to present a victim impact statement at sentencing. Mr. Darden failed to inform me of the filing of the Government's Sentencing Memorandum, and he failed to file any response to the Government's Sentencing Memorandum.

19.

On June 3, 2008, I was sentenced before Judge Edenfield. Mr. Darden prepared a statement that I was to say to the Court at sentencing. He told me that statement was all I was allowed to say. After I was sentenced to 80 months in prison, Mr. Darden told me that he would do an immediate appeal.

20.

Mr. Darden did file a Notice of Appeal within 10 days.

21.

On July 16, 2008, Mr. Darden filed a brief in the United States Court of Appeals for the Eleventh Circuit stating that there were no non-frivolous issues for appeal, and filed a motion to

5

withdraw as my counsel.   In August or September, 2008, Mr. Darden told me that he was withdrawing the appeal and requesting that the appeal be dismissed.

22.

Shortly thereafter, I retained Gillen Withers & Lake LLC to represent me in the appeal. Gillen Withers & Lake substituted for Mr. Darden as my counsel in the appeal, and proceeded to raise errors relating to the sentence and enhancements imposed on me, as well as Mr. Darden's ineffectiveness as my counsel.

23.

It is my belief that the actions or omissions by Mr. Darden described in this declaration were not reasonable or the result of reasonable professional judgments. It is my belief that, as a result of Mr. Darden's actions or omissions, Mr. Darden's performance as my counsel was deficient and ineffective. It is my belief that Mr. Darden's deficient and ineffective performance prejudiced my rights at sentencing.

24.

By my motion for resentencing, I seek only that my sentence be vacated and that I be resentenced at a proceeding in which I am represented by competent counsel and afforded a full and fair opportunity to object to any recommended sentence or enhancement, and to present any arguments for a low or reduced sentence.

6

Pursuant to Title 28 U.S.C. § 1746, I do hereby declare under penalty of perjury that the foregoing twenty-four (24) paragraphs are true and correct to the best of my knowledge and belief.

This the _24_ day of September, 2009.


Lance Hensley